UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DARLENE TRAFTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-08-322-B-W |
| | ) | |
| SUNBURY PRIMARY CARE, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTIONS TO EXCLUDE THE TESTIMONY OF
DR. JENNIFER TRIMBLE, D.O., DR. ADAM LAUER, D.O. AND
MS. EILEEN G. KALIKOW**

This is an employment discrimination case arising from the termination of Darlene Trafton from Sunbury Primary Care, P.A. (Sunbury).  Ms. Trafton filed a disability discrimination claim against Sunbury, alleging violations of state and federal law.  Specifically, Ms. Trafton alleges that she was unlawfully terminated on the basis of post-traumatic stress disorder (PTSD) and depression.

**I.     BACKGROUND**

On May 1, 2009, Sunbury moved under *Daubert* to exclude the testimony of Ms. Trafton's medical experts, Dr. Jennifer Trimble, D.O. and Dr. Adam Lauer, D.O., and Ms. Trafton's vocational expert, Ms. Eileen G. Kalikow.[1]  *Def. Sunbury Primary Care's Mot. to Exclude the Expert Testimony of Adam Lauer, D.O. and Jennifer Trimble, D.O. Pursuant to Federal Rule of Evidence 702 and Daubert/Kumho* (Docket # 17) (*Def.'s Mot. to Excl. Medical Experts*); *Def. Sunbury Primary Care's Mot. to Exclude the Expert Testimony of Eileen G. Kalikow Pursuant to Federal Rule of Evidence 702 and Daubert/Kumho* (Docket # 18) (*Def.'s Mot. to Excl. Vocation Expert*).  On May 22, 2009, Ms. Trafton responded.  *Pl.'s Opp. to Def.'s*

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

*Mot. in Limine to Exclude Testimony of Pl.'s Proposed Experts Drs. Jennifer Trimble and Adam Lauer* (Docket # 31) (*Pl.'s Opp. to Mot. to Excl. Medical Experts*); *Pl.'s Opp. to Def. Sunbury Primary Care's Mot. to Exclude Testimony of Eileen Kalikow Pursuant to Federal Rule of Evidence 702 and Daubert/Kumho* (Docket # 29) (*Pl.'s Opp. to Mot to Excl. Vocational Expert*). Sunbury replied on June 2, 2009. *Def.'s Reply to Pl.'s Opp. to Sunbury's Mot. to Exclude Testimony of Adam Lauer, D.O. and Jennifer Trimble, D.O. and Request for Oral Argument* (Docket # 43) (*Def.'s Reply on Medical Experts*); *Def.'s Reply to Pl.'s Opp. to Sunbury's Mot. to Exclude Testimony of Eileen Kalikow and Request for Oral Argument* (Docket # 42) (*Def.'s Reply on Vocational Expert*).

The Court concludes that a family physician is qualified under Federal Rule of Evidence 702 to express expert opinions within the limits of her training and education as to the diagnosis or treatment of depression. It also concludes that a vocational expert is qualified under Federal Rule of Evidence 702 to express expert opinions within the limits of her training and education as to the discouragement workers experience when seeking employment. The Court denies Sunbury's motions.

## II.     DISCUSSION

### A.     Legal Standard

The trial court must determine that the proffered expert witness is "qualified as an expert by knowledge, skill, experience, training, or education" before permitting his testimony to be presented to the jury. Fed. R. Evid. 702. In *Daubert*, the Supreme Court assigned to federal judges the gatekeeping role of screening from introduction in evidence expert testimony that, although relevant, is nevertheless based on unreliable scientific methodologies. 509 U.S. at 597. While the "gatekeeping function requires the trial court to determine, given the proffered

expert's background, whether the scientific, technical, or other specialized knowledge he offers will assist the trier better to understand a fact in issue," *Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion Familiar*, 345 F.3d 15, 24 (1st Cir. 2003) (quotation marks and citation omitted), this function is "a flexible one" that "depends upon the particular circumstances of the particular case at issue." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

### B.    The Experts

#### 1.    Dr. Jennifer Trimble, D.O.

Dr. Jennifer Trimble obtained a diploma in osteopathic medicine in 1999 from the Chicago College of Osteopathic Medicine, and in 2004, completed her residency at the Union Hospital Family Practice in Terre Haute, Indiana. *Declaration of Jennifer Trimble* Ex. A (Docket # 32) (*Trimble Decl.*). She is licensed to practice osteopathic medicine in Maine and has worked as a family physician in Maine since 2005. *Id*. Her medical school curriculum included courses in psychiatry and during her residency she diagnosed various mental health disorders. *Trimble Decl*. ¶¶ 3, 4. Dr. Trimble asserts that diagnosing and treating mental illnesses is a routine part of the practice of family medicine. *Trimble Decl*. ¶ 5.

Dr. Trimble treated Ms. Trafton on January 6, January 10, February 7, and February 27, 2006. *Trimble Deposition* at 31:14-19 (Docket # 21) (*Trimble Depo*.). As part of her medical evaluation of Ms. Trafton, Dr. Trimble received a patient history from Ms. Trafton including details of her psychiatric history. *Id*. at 27:25; 28:5. Through the course of treatment, Dr. Trimble learned of Ms. Trafton's prior suicide attempts and hospitalizations, diagnoses of depression and PTSD, as well as the abuse Ms. Trafton observed growing up and a sexual assault she experienced when she was approximately twenty-five. *Id*. at 29:17-25; 30:1-3. Dr. Trimble

also reviewed Ms. Trafton's medical records which describe her history of depression, PTSD, and suicide attempts. *Id*. at 84:24-25, 85:1-3. Ms. Trafton has designated Dr. Trimble as a medical expert to testify about her office notes, which include the doctor's diagnoses of insomnia, fatigue, depression and PTSD, and to testify that Ms. Trafton has a record of depression and suicide attempts. *Pl.'s Amend. Expert Designation* Ex. A at 1-2 (Docket # 18) (*Pl.'s Exp. Desig*.).

### 2. Dr. Adam Lauer, D.O.

Dr. Adam Lauer graduated from the University of New England College of Osteopathic Medicine in 2000. *Lauer Deposition* at 13:20-23 (Docket # 21) (*Lauer Depo*.). He completed his osteopathic rotating internship and an osteopathic family medicine residency at Eastern Maine Medical Center, *id*. at 13:20-25; 14:1-8, and has been engaged in the full-time practice of family medicine since 2003. *Id*. at 15:10-17. As a family physician, Dr. Lauer has a general practice which includes psychiatric care. *Id*. at 16:12-20. Dr. Lauer began treating Ms. Trafton after her termination from Sunbury on October 19, 2006. *Id*. at 21:5-9. The October visit included treatment for migraines, depression and a lesion on Ms. Trafton's nose. *Id*. at 22:9-18, 23:7-9. Ms. Trafton saw Dr. Lauer on January 5, 2007, for knee pain and depression. *Id*. at 27:25; 28:1-6. Dr. Lauer next saw Ms. Trafton on July 24, 2007 to perform a physical for Ms. Trafton's nursing school application. *Id*. at 36:7-14. Dr. Lauer saw Ms. Trafton on September 25, 2007, and October 12, 2007 for anxiety. *Id*. at 40:2-12; 52:17-20. On November 5 and 7, 2007, Dr. Lauer treated Ms. Trafton for neck pain. *Id*. at 56:16-22. Ms. Trafton's next and final visit with Dr. Lauer occurred on September 15, 2008 at which point her chief complaint was fatigue. *Id*. at 63:4-6; 12-14. Dr. Lauer is expected to testify consistent with his treatment notes. *Pl.'s Exp. Desig*. at 1.

### 3. Ms. Eileen G. Kalikow

Ms. Kalikow has a bachelor's degree in sociology from the University of Massachusetts and a master's degree in education from Boston University. *Def.'s Mot. to Excl. Vocational Expert* Ex. B at 2. She attended the Family Therapy Program at the Boston Family Institute, in Boston Massachusetts. *Id.* Since 1983, she has worked as a vocational rehabilitation counselor, career counselor, and organizational consultant for Vocational Resources, located in Portland, Maine. *Id.* at 1. She is a certified rehabilitation counselor and an approved rehabilitation provider. *Id.* at 3. She spends a portion of her time providing expert witness testimony on vocational rehabilitation. *Id.* at 4-6; *Kalikow Deposition* at 37:7-9 (Docket # 21) (*Kalikow Depo.*).

Ms. Kalikow has taken course work in psychological conditions, attended family therapy programs, and has been supervised by a psychiatrist for twenty years in her vocational work. *Kalikow Depo.* at 79:12-20. She does not have a degree or any other certification in psychology and is not a licensed social worker, though she does perform therapy. *Id.* at 79: 21-25; 80:1-8. She also performs "Outplacement Counseling" in which she "assist[s] recently terminated or laid off employees . . . find new work, and . . . make the transition from loss of job to securing new employment." *Declaration of Eileen Kalikow* at 1 (Docket # 30) (*Kalikow Decl.*). It is Ms. Kalikow's "experience that people who have been fired or laid off from their jobs often feel as if they are 'failures,' and go through a process of grieving the loss of the former job, discouragement, and adjustment to unemployment subsequent to their termination." *Id.*

In preparation for her expert opinion, Ms. Kalikow spoke with Ms. Trafton four or five times, and met with her for two hours on January 27, 2009. *Kalikow Depo.* at 6:24-25, 17:15-21. She also reviewed Ms. Trafton's resume, personnel files from Sunbury, earning statements,

medical records, and a report from the Maine Human Rights Commission. *Id*. at 8:1-7, 17-18. During her meeting with Ms. Trafton, Ms. Kalikow learned about her work search from Ms. Trafton's termination on March 6, 2006 through the fall of 2006. *Id*. at 19:15-25; 57:5-8. Ms. Kalikow is expected to express expert opinions about this work search. *Pl's Exp. Desig.* at 2. In addition, it is expected that Ms. Kalikow will testify that "Ms. Trafton's work search was affected by her depression which was aggravated by the termination and that Ms. Trafton had a poor reference from David Savell," Ms. Trafton's supervisor at Sunbury. *Id*.

    **C.**    **The Court's Analysis**

        **1.**    **Dr. Lauer and Dr. Trimble**

Sunbury asserts that neither Dr. Lauer nor Dr. Trimble is a psychiatrist and that their "lack of formal training or education in the field of psychiatry" renders them "not qualified to testify on psychiatric medical conditions." *Def.'s Mot. to Excl. Medical Experts* at 6, 8. Even if Dr. Trimble and Dr. Lauer are qualified to testify to Ms. Trafton's mental condition, Sunbury maintains their testimonies should be excluded because "the methodology . . . used to determine that Ms. Trafton suffers from depression and [PTSD] is wholly unreliable" as it is based on Ms. Trafton's "self-report[s]." *Id*. at 6, 9. Finally, with regard to Dr. Lauer, Sunbury argues that his testimony should "be excluded as irrelevant since he began treating Ms. Trafton seven months after her termination from Sunbury and does not offer an opinion on her medical condition at any time relevant to this case." *Id*. at 5.

The crux of Sunbury's argument to exclude the testimonies of Dr. Trimble and Dr. Lauer is that as family practitioners, they are not qualified to testify on psychiatric conditions. The Court can easily dismiss this argument. In discussing the standard of Rule 702, the First Circuit stated that "[t]he proffered expert physician need not be a specialist in a particular medical

discipline to render expert testimony relating to that discipline." *Gaydar*, 345 F.3d at 24; *see also Payton v. Abbott Labs*, 780 F.2d 147, 155 (1st Cir. 1985) ("The fact that the physician is not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it."). In *Gaydar*, the proffered medical testimony was from a medical doctor and general practitioner. 345 F.3d at 24. Although the doctor was not a gynecologist, had only performed two pelvic examinations since his internship, and had never palpated an ectopic pregnancy, the First Circuit found that given the doctor's education and training, he was qualified to give expert testimony on the plaintiff's pregnancy. *Id*. at 24.

Similarly, here, Dr. Trimble and Dr. Lauer have extensive education, training and experience in the practice of family medicine, a field which provides comprehensive health care to people of all ages. As such, based on their training and education, their knowledge of Ms. Trafton's medical history, and their treatment of Ms. Trafton, they are qualified to give their opinions regarding Ms. Trafton's mental health. To exclude Dr. Trimble and Dr. Lauer's testimonies on the sole basis that their medical specialty was something other than psychiatry would be an abuse of discretion. *Id*. at 24-25 (stating that it would be "an abuse of discretion for the court to exclude [doctor's] testimony on the sole basis that his medical specialty was something other than gynecology or obstetrics").

Dr. Trimble and Dr. Lauer spent considerable time treating Ms. Trafton and have based their opinions on their personal interactions and observations. Ms. Trafton related to each her physical and mental symptoms, and provided a context for these symptoms which included her past history of depression and PTSD. Diagnoses based on personal observations and medical training is certainly admissible. *See S.M. v. J.K.*, 262 F.3d 914, 921 (9th Cir. 2001) (allowing diagnosis of PTSD from physiatrist relying on his own "understanding" of the disorder).

Furthermore, Dr. Trimble and Dr. Lauer's proffered testimony is limited to Ms. Trafton's treatment and diagnoses; rigorous physiological testing is not necessary for such testimony. *See Munafo v. Metro. Transp. Auth.*, 98 CV-4572 (ERK), 00-CV-0134 (ERK), 2003 U.S. Dist. LEXIS 13495, at *60-63 (E.D.N.Y. Jan. 22, 2003) (allowing expert testimony on treatment and diagnosis of plaintiff's depression even though medical expert did not conduct any physiological tests).

The fact that Dr. Trimble and Dr. Lauer's opinions were rendered from conversations with Ms. Trafton and her prior records, instead of an "accepted test" goes to weight, not admissibility of their testimony. *Def.'s Mot. to Ex. Medical Experts* at 9. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Brown v. Wal-Mart Stores, Inc*., 402 F. Supp. 2d 303, 308 (D. Me. 2005) (citations and internal quotation marks omitted); *see also Payton*, 780 F.2d at 156 (stating "[i]f the factual underpinnings of their opinions were in fact weak, that was a matter affecting the weight and credibility of their testimony"). The First Circuit has stated:

> As long as an expert's scientific testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process - competing expert testimony and active cross-examination – rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) (quoting *Daubert* 509 U.S. at 590).

As the Supreme Court wrote in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

Based on Dr. Trimble and Dr. Lauer's treatment of Ms. Trafton, the Court cannot say that their testimonies are fundamentally unsupported.  Dr. Trimble and Dr. Lauer are permitted to testify on their treatment of Ms. Trafton and any medical opinions formulated through this treatment.[2]  "Flaws in [their] opinion[s]" or the fact that neither conducted "tests" can "be exposed through cross-examination or competing expert testimony."  *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002).  Sunbury's motion to exclude the testimonies of Dr. Trimble and Dr. Lauer is therefore denied.

### 2.    Ms. Kalikow

Sunbury argues that Ms. Kalikow's testimony that Ms. Trafton made a work search after her termination from Sunbury is unnecessary because Ms. Trafton herself could testify about her work search after her termination.  *Pl.'s Mot. to Exc. Vocational Expert* at 4-5.  Sunbury claims that Ms. Kalikow's opinions that Ms. Trafton's depression affected her work search and that her depression was aggravated by her termination from Sunbury should also be excluded because they are "based upon a speculative interpretation of medical records that make no reference whatsoever to Ms. Trafton's ability to work or search for work."  *Id.* at 5.  Furthermore, Ms. Kalikow is not a medical expert with specialized knowledge or training and she should not be permitted to interpret any medical records.  *Id.*  Even if Ms. Kalikow is qualified to testify, Sunbury argues "that there is nothing in the relied upon medical records to support Ms. Kalikows' opinions that Ms. Trafton's depression was aggravated by her termination and her work search was affected by depression."  *Id.* at 6.

Ms. Kalikow may testify as a lay witness about what Ms. Trafton told her during their conversations, assuming the statements are otherwise admissible.  *See Rooney*, 519 F. Supp. at

---

[2]  Even though Dr. Lauer treated Ms. Trafton after she was terminated from Sunbury, his testimony may shed light on the severity of her depression and PTSD.  *See Rooney v. Sprague Energy Corp.*, 519 F. Supp. 2d 110, 121 (D. Me. 2007).

116-117.[3]  This would include the discouragement Ms. Trafton experienced as she looked for employment after being terminated.[4]  As a vocational expert, Ms. Kalikow may testify on the discouragement workers feel when looking for employment, and if Sunbury raises the issue, Ms. Kalikow may also testify as a rebuttal witness to Sunbury's assertions that Ms. Trafton failed to mitigate her damages.[5]

The extent to which Ms. Kalikow may testify about Ms. Trafton's depression and her depression being aggravated by her termination will be determined at the time of trial.  Ms. Kalikow is not a trained medical professional and any opinions on medical matters or opinions based on her interpretation of medical records would be outside the realm of her expertise.  If Sunbury wishes to reassert its objection at trial, the Court will take Ms. Kalikow's testimony outside the presence of the jury and determine whether the proposed testimony should be

---

[3]   The fact that Ms. Trafton can testify to her work search is not a ground to exclude Ms. Kalikow's testimony on this point.

[4] Through her conversations with Ms. Trafton, Ms. Kalikow learned "what was going on with [Ms. Trafton] after her termination." *Kalikow Depo*. at 70:7-9.  Specifically, Ms. Trafton "described being very discouraged, that she would never get another job in the medical-management field, that she felt that her career had been ended by the fact that she was terminated, and that she just felt like she had to look for another type of work, just give up and go back to school and do something totally different." *Id*. at 70:8-14.

[5] On January 27, 2009 Sunbury designated Christopher Temple as its vocational expert.  *Def.'s Expert Witness Designation* at 1 (Docket # 21-36).  Attached to this designation was a preliminary report with Mr. Temple's impressions of this case.  *Id*. at Ex. A.  On March 31, 2009 Sunbury amended its expert designation to include the comprehensive Labor Market Survey prepared by Mr. Temple.  *Def.'s Amended Expert Witness Designation* at Ex. A (Docket # 21-37).  Ms. Kalikow was deposed on February 24, 2009, and her deposition addresses Mr. Temple's Labor Market Survey.  *Kalikow Depo*.  On May 22, 2009, Ms. Kalikow filed a declaration contesting parts of Mr. Temple's Labor Market Survey.  *Kalikow Decl*. (Docket # 30).

Sunbury argues that Ms. Kalikow "failed to supplement Ms. Kalikow's opinion as required by rule 26(e)" and thus her testimony on Mr. Temple's Labor Market Survey should be excluded.  *Def.'s Reply on Vocational Expert* at 6-7.  Federal Rule of Civil Procedure 26(e)(2) provides that "[f]or an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.  Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  Fed. R. Civ. P. 26(e)(2).  Pursuant to Rule (a)(3)(B), the deadline for pretrial disclosures is 30 days before trial.  Fed. R. Civ. P. 26(a)(3)(B).  When Ms. Kalikow's declaration was filed on May 22, 2009, the trial in this case was set to begin on September 8, 2009.  Minute Entry on February 9, 2009.  Ms. Kalikow's supplemental opinions were filed well before the 30-day limit came into effect and are timely.

excluded under *Daubert*.  Sunbury's motion for the wholesale exclusion of the testimony of Ms. Kalikow is, however, denied.

## III.  CONCLUSION

The Court DENIES Defendant Sunbury Primary Care's Motion to Exclude the Expert Testimony of Adam Lauer, D.O. and Jennifer Trimble, D.O. Pursuant to Federal Rule of Evidence 702 and Daubert/Kumho (Docket # 17) and DENIES Defendant Sunbury Primary Care's Motion to Exclude the Expert Testimony of Eileen G. Kalikow Pursuant to Federal Rule of Evidence 702 and Daubert/Kumho (Docket # 18).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 25th day of February, 2010